**STEPTOE & JOHNSON LLP**
ANTHONY ANSCOMBE (State Bar No. 135883)
aanscombe@steptoe.com
CODY DECAMP (State Bar No. 311327)
cdecamp@steptoe.com
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA  94105
Telephone:   415.365.6700
Facsimile:    415.365.6699

Attorneys for Defendant
JELLY BELLY CANDY COMPANY
**Additional Counsel Listed On P. 2:**

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD HOFFMAN, individually and on behalf of all others similarly situated,<br><br>  *Plaintiff,*<br><br>vs.<br><br>JELLY BELLY CANDY COMPANY, INC,<br><br>  *Defendant.* | Case No. 2:19-cv-01935-JAM-DB<br><br>**CLASS ACTION**<br><br>**JOINT STATUS REPORT CONCERNING *BARR***<br><br>**JURY TRIAL DEMANDED** |

**1**

**JOINT STATUS REPORT CONCERNING *BARR***

1

2

## ADDITIONAL COUNSEL:

3

| | |
|---|---|
| Annick M. Persinger (SBN 272996) **TYCKO & ZAVAREEI LLP** 1970 Broadway, Suite 1070 Oakland, CA 94612 510.254.6808 (p) 202.973.0950 (f) apersinger@tzlegal.com<br><br>Hassan A. Zavareei (SBN 181547) Andrea R. Gold **TYCKO & ZAVAREEI LLP** 1828 L Street NW, Suite 1000 Washington, DC 20036 202-973-0900 (p) 202-973-0950 (f) hzavareei@tzlegal.com agold@tzlegal.com<br><br>*Counsel for Plaintiff Howard Hoffman and the Class* | Scott Edelsberg **EDELSBERG LAW, P.A.** California Bar No. 330990 20900 NE 30th Avenue, Ste. 417 Aventura, FL 33180 Tel: 305-975-3320 scott@edelsberglaw.com<br><br>Counsel for Plaintiff *to be admitted Pro Hac Vice |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**2**

**JOINT STATUS REPORT CONCERNING *BARR***

### JOINT STATUS REPORT CONCERNING *BARR*

Plaintiff Howard Hoffman ("Plaintiff") and Defendant Jelly Belly Candy Company, Inc. ("Defendant") hereby submit this Joint Status Report concerning the Supreme Court's recent decision in *Barr v. Am. Assoc. of Political Consultants*, 2020 U.S. LEXIS 3544, 519 U.S. ___ (2020)("*Barr*"):

On July 6, 2020, the Supreme Court issued its decision in *Barr*, concluding "that the 2015 government-debt exception added an unconstitutional exception" to the TCPA, and that "severing it from the remainder of the statute" was the appropriate remedy. *See Barr v. Am. Ass'n of Political Consultants*, 2020 U.S. LEXIS 3544, *34 (U.S. July 6, 2020) ("We hold that the 2015 government-debt exception added an unconstitutional exception to the law. We cure that constitutional violation by invalidating the 2015 government-debt exception and severing it from the remainder of the statute."). In severing the government-debt exception, the Court stated that the "remainder of the law is capable of functioning independently and thus would be fully operative as a law." *Id.* at *25.

While *Barr* did not construe the statutory definition of an automated telephone dialing system ("ATDS"), the Supreme Court on July 9, 2020 granted review in *Facebook, Inc. v. Duguid*, No. 19-511, on the following question:

> Whether the definition of ATDS in the TCPA [Telephone Consumer Protection Act] encompasses any device that can "store" and "automatically dial" telephone numbers,

**3**

1

> even if the device does not "us[e] a random or sequential number generator."

2

3   Petition for Writ of Certiorari, *Facebook, Inc. v. Duguid*, No. 19-511 (filed Oct. 17,

4   2019) (attached as Exhibit H to Defendant's Request for Judicial Notice, ECF No.

5   17 (filed Mar. 5, 2020)).[1]

6

7       The parties disagree on whether a further stay of this action pending the

8   Supreme Court's decision in *Facebook* is warranted. Defendant asked Plaintiff to

9   stipulate to a stay; Plaintiff does not agree that any further delay is warranted.

10

11       **Plaintiff's Position**:

12       There are several reasons why the Court should not further delay resolution

13   of this case, and Plaintiff's and the putative class members' day in court. *First*, the

14   stay sought by Defendant is very lengthy, as *Facebook* will likely take more than a

15

16   year to resolve. Argument will likely be scheduled for January 2021, meaning that

17   an opinion will not issue until May or June 2021, or possibly later given the current

18   pandemic. Moreover, courts have held that "being required to defend a suit, without

19   more, does not constitute a clear case of hardship or inequity." *Larson v. Harman*

20   *Mgmt. Corp.*, No. 1:16-cv-00219-DAD-SKO, 2017 U.S. Dist. LEXIS 117134, at *8

21

22

23

24

25   ---

[1] The *Facebook* docket states "Petition GRANTED limited to Question 2 presented by the petition." *See* July 9, 2020 docket entry available at https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/19-511.html.

26

27                                    **4**

28   **JOINT STATUS REPORT CONCERNING *BARR***

(E.D. Cal. July 26, 2017) (quoting *Lockyer v. Mirant Corp.*, 398 F.3d at 1112)).

*Second*, the requested stay turns on speculation that the Supreme Court might issue a ruling that contradicts binding Ninth Circuit precedent.  That is not a sufficient reason to grant a lengthy stay.  Specifically, the Ninth Circuit determined the definition of an ATDS in *Marks v. Crunch San Diego*, LLC, 904 F.3d 1041, 1043 (9th Cir. 2018) (holding that an ATDS "means equipment which has the capacity (1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically…").. And, as Ninth Circuit precedent makes clear, "once a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority." *Yong v. INS*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000). Otherwise, scores of cases would essentially automatically grind to a halt pending Supreme Court review.  Additionally, Defendant's prediction, or hope, that the Supreme Court will somehow absolve it of liability in this case is unlikely to be borne out given the unanimous praise the statute received from the Court in *Barr*. *See Barr*, 2020 U.S. LEXIS 3544, at *5 ("Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of

5

**JOINT STATUS REPORT CONCERNING *BARR***

complaints.").

*Third*, in claiming that the Supreme Court's ruling in *Facebook* will have a dispositive effect on this case, Defendant ignores that the functionality of the dialing system used by Defendant is in dispute. Plaintiff has alleged that the equipment used by Defendant to transmit thousands of unsolicited text messages falls within the statutory definition of an ATDS. While Defendant disputes this, the issue is properly subject to discovery that will have to proceed no matter how the Court rules in *Facebook*. Defendant essentially asks this Court to take its word on whether it utilized an ATDS and ignore Plaintiff's allegations. The Court should decline Defendant's invitation.

*Fourth*, as it relates to judicial economy, Defendant's only argument is that the Court runs the risk of the Supreme Court issuing an order in conflict with *Marks*. But as numerous district courts in this circuit have explained, *Marks* is binding authority and the orderly course of justice dictates adhering to such binding authority. *See Duguid*, 926 F.3d at 1150*; see also Larson*, 2018 WL 6459964 at *5 (*citing N.L. ex rel. Lemos v. Credit One Bank, N.A.*, No. 2:17-cv-01512-JAM-DB, 2018 WL 5880796, at *1 (E.D. Cal. Nov. 8, 2018); *Shupe v. Capital One Bank USA NA*, No. CV-16-00571-TUC-JGZ, 2018 WL 5298396, at *4 (D. Ariz. Oct. 25, 2018), appeal docketed, No. 18-17181 (9th Cir. Nov. 9, 2018); *Keifer v. HOSOPO Corp.*, No. 3:18-cv-1353-CAB-(KSC), 2018 WL 5295011, at *1 (S.D. Cal. Oct. 25, 2018)).

**JOINT STATUS REPORT CONCERNING *BARR***

Ultimately, the parties will need to complete discovery —including non-party and expert discovery— and engage in motion practice to resolve the issue. This will need to occur irrespective of how the Supreme Court rules in *Facebook*. Therefore, a stay will not reduce the burden of litigation and, as such, this factor weighs in favor of denying a stay.

*Fifth*, *Barr* demonstrates why courts should be careful when granting a defendant's request for a stay based on a supposed dispositive ruling from the Supreme Court. Given how *Barr* was decided, the stay in this case did not achieve its goal of preventing needless litigation. To the contrary, Defendant succeeded in delaying this case to the detriment of Plaintiff and the putative class members. The Court should not take a similar path as it relates to *Facebook*, especially considering that the delay would be considerably lengthier and, thus, more prejudicial to Plaintiff and the putative Class.

In sum, it is Plaintiff's position that Court should enter a scheduling order allowing fact discovery to commence for a period of approximately ten (10) months.

**Defendant's Position**:

Defendant Jelly Belly Candy Company ("Defendant" or "JBCC") respectfully requests that the Court keep the stay in this proceeding in place until the Supreme Court rules in the matter of *Facebook v. Duguid*, Appeal No. 19-511 ("*Duguid*"). The TCPA's structure of statutory penalties – $500 to $1500 per text – poses

**JOINT STATUS REPORT CONCERNING *BARR***

existential risks of crushing liability for those accused of violating its terms.  That the meaning of an "automated telephone dialing system" – a term defined by the statute itself – is unclear after the statute has been in effect for nearly three decades underscores that few defendants have the ability to challenge a law which could annihilate them.  Nowhere is the *in terrorem* effect of the class device so fearsome as it is with the TCPA.  Here, Facebook has taken up that challenge.  This Court should allow the Supreme Court to clarify the meaning of this critical statutory term, which has generated a serious Circuit split.  As noted by the Court, the competing definitions of what "constitutes an ATDS has been in flux."  Dkt. 20 at 5.  The majority of Circuits addressing this question have determined that, to qualify as an ATDS, a platform must be capable of either (1) storing telephone numbers using a random or sequential number generator, or (2) producing telephone numbers using a random or sequential number generator.  *See id.*; *see also Gadelhak v. AT&T Servs., Inc.*, 950 F. 3d 458, 460 (7th Cir. 2020) ("We hold that 'using a random or sequential number generator' modifies both 'store' and 'produce.'"); *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1306 (11th Cir. 2020) ("In the absence of an ideal option, we pick the better option—in this instance that the clause modifies both verbs."); *Dominguez ex rel. Himself v. Yahoo, Inc.*, 894 F.3d 116, 119 (3d Cir. 2018).

The Ninth Circuit, and more recently the Second Circuit, represent the minority view.  *See* Dkt. 20 at 5.  The Ninth Circuit has held that an ATDS is any platform that (1) has the capacity to store a telephone number, or (2) is capable of producing telephone numbers using a random or sequential number generator. *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1049 (9th Cir. 2018).  Indeed, as Facebook argued in support of Certiorari, the definition adopted by the 9th Circuit would render ever smart phone an ATDS such that there could be no end of potential

**8**

**JOINT STATUS REPORT CONCERNING** *BARR*

liability.  Indeed, the 9th Circuit's decision in *Marks* is likely an important reason why Plaintiff, a resident of Florida, came to California to bring this action, rather than in his home state of Florida (within the 11th Circuit).

Here, the outcome of this case may well depend on the meaning of ATDS.  If JBCC did not use an ATDS to transmit messages, it can have no liability.  *See* 47 U.S.C. § 227(b)(1).  Plaintiff has already received discovery on this topic, including information from JBCC in the form of a document production, answers to interrogatories, and a third-party subpoena to Bronto, the entity that has assisted JBCC with its SMS messaging.  Before discovery goes any further, or class certification briefing occurs, it is extremely important that the parties understand what definition of an ATDS applies to this case.

The stay sought is for a reasonable length and not of indefinite duration.  Oral argument is expected shortly after the Supreme Court's term begins in October 2020, just a few months from now, with a decision issuing no later than the summer of 2021 and perhaps well before then.[2]  In this district, stays of six months have been considered stays of "a fairly short duration."  *N. River Ins. Co. v. Leffingwell Ag Sales Co.*, No. CV-F-10-2007, 2011 WL 304579, at *7 (E.D. Cal. Jan. 27, 2011).  Indeed, this district has stayed matters pending appellate review even where oral argument in those appeals was not scheduled, but were expected to occur "in the next several months."  *Gong-Chun v. AETNA, Inc.*, No. 1:09 Civ. 01995, 2010 WL 1980175, at *3 (E.D. Cal. May 17, 2010).

There will be prejudice to JBCC, and a potential wasting of the court's resources, if litigation goes forward without a clear understanding of the applicable law.  When an appellate court is set to decide a case that will "clarify the legal landscape," denial of a stay constitutes a hardship on the party seeking the stay.

---

[2] https://www.law360.com/articles/1290605

**JOINT STATUS REPORT CONCERNING** *BARR*

1  *United States v. California*, 2018 WL 5310675, at \*1–2 (finding that party seeking

2  stay would be prejudiced if forced to litigate issues that the Ninth Circuit's decision

3  on appeal could render moot).   JBCC will suffer hardship in the form of responding

4  to "inefficient or pointless discovery." *See Gong-Chun*, 2010 WL 1980175, at \*4

5  (granting motion to stay and finding that Defendant would be harmed if required to

6  litigate pending the California Supreme Court's review of statutes at issue in the

7  litigation); *see also Munoz v. PHH Corp.*, No. 08 Civ. 0759, 2011 WL 4048708, at

8  \*4 (E.D. Cal. Sept. 9, 2011) (Stay pending Supreme Court review of case that would

9  impact claims asserted, and finding that Defendant would be harmed in "conducting

10  what could be pointless discovery and motion practice.")

11  JBCC could face additional burdens, unique to class actions, including the

12  "time to be expended on resolving questions of certification, further dispositive

13  motions practice, giving putative class members notice of claims, and settlement

14  discussions, all over claims that may be mooted by resolution of the appeal." *Finder*

15  *v. Leprino Foods Co.*, No. 1:13 Civ. 02059, 2017 WL 1355104, at \*4 (E.D. Cal. Jan.

16  20, 2017).   And, at the end of discovery, and after class certification, JBCC and the

17  Court may have to revisit discovery, class certification, and other issues as warranted

18  by the Supreme Court's pronouncements.   It is in no-one's interest that work be

19  repeated, or revisited, because the Supreme Court has issued an opinion that alters a

20  potentially dispositive issue of substantive law.

21  By contrast, the Plaintiff, and members of the putative class, face no potential

22  for prejudice.   They have already obtained considerable discovery.   JBCC

23  understands its obligation to preserve evidence.   And this is not a situation where

24  Plaintiff has suffered some economic calamity or physical injury.   Instead, he simply

25  wants free money.   An inability to pursue this claim while the law is unclear is simply

26  not a harm.

27  **10**

28  **JOINT STATUS REPORT CONCERNING *BARR***

JBCC is not attempting to predict how the Supreme Court will decide *Duguid*. While the outcome may be uncertain, the one thing that is crystal clear is that the decision will provide clarity on issues that are directly relevant to this litigation – the proper definition of an ATDS. The appropriate definition of an ATDS, and whether JBCC utilized such technology to send SMS messages, is front and center in this litigation. The Complaint alleges that Plaintiff received two telemarketing text messages from JBCC, one on June 8, 2019 and the other on June 18, 2019. *See* Dkt. 1. ¶¶ 26–29. Plaintiff claims that these text messages constitute violations of the TCPA's automatic-dialing restrictions codified at 47 U.S.C. § 227(b)(1)(A). *See id*. ¶¶ 62–74. The Complaint alleges that JBCC sent these text messages to consumers by and through the use of an "automatic telephone dialing system," without receiving Plaintiff's express written consent to do so. *See id*. ¶¶ 31, 33–44. The Complaint identifies "[w]hether Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS" as one of the common questions of law and fact that purportedly predominates in this action. See id. ¶ 55(1). The Court noted that "the definitional problem of what constitutes an ATDS is relevant here, as Plaintiff alleges Defendant used an ATDS to send him text messages, but Defendant contends it did not." Dkt. 20 at 5.

Additionally, the Court is well within its discretion to stay these proceedings notwithstanding the Ninth Circuit's decision in *Marks*. There are numerous examples of courts in this District staying cases pending Supreme Court review despite the existence of Ninth Circuit authority. *See, e.g., Cook v. Rent-A-Ctr., Inc.*, 2017 WL 4270203, at *2 (E.D. Cal. Sept. 26, 2017) (staying case pending Supreme Court review notwithstanding controlling Ninth Circuit authority); *Sims v. AT & T Mobility Servs. LLC*, 2013 WL 753496, at *8 (E.D. Cal. Feb. 27, 2013) (same); *Alvarez v. T-Mobile USA, Inc.*, 2010 WL 5092971, at *1 (E.D. Cal. Dec. 7, 2010)

**JOINT STATUS REPORT CONCERNING *BARR***

(same).  Moreover, the virtues of the TCPA are not at issue in the *Duguid* case.  The TCPA can be recognized as a popular law notwithstanding the statute's ambiguity – ambiguity that the Supreme Court will provide critical guidance on in its ruling in *Duguid*.

JBCC does not dispute that ultimately whether the technology it uses constitutes an ATDS will be the subject of discovery and motion practice in the future. While the underlying facts will not change, this stay is being sought so that the law these facts are applied to is clear and unambiguous.  There is no question that the legal issue here meets the standard for a stay: stays are appropriate where issues being reviewed by the Supreme Court "may have a substantial impact on the pending matter." *Fortis v. Warrior Trading, Inc.*, No. 2:19 Civ. 00627, 2019 WL 5721835, at *2 (E.D. Cal. Nov. 5, 2019) (internal quotation marks omitted).  The definition of an ATDS will certainly have a substantial impact on this matter, regardless of which way the Supreme Court rules on the issue.

Finally, Plaintiff is factually and legally incorrect regarding the efficacy and impact of the stay granted in this case, and fails to recognize that *Duguid* is very likely to directly impact the disposition of this action.  In the first instance, the present stay has not prejudiced Plaintiff in the slightest, and has only been ongoing for about three weeks.  Second, as the Court recognized in its order granting the stay, a stay was warranted pending *AAPC* because the Supreme Court's decision "*may have* [had] legal implications for this case." Dkt. 20 at 4 (emphasis added).  While the Supreme Court ultimately elected to leave intact the TCPA, *Duguid* will speak directly on issues in this litigation that are central to JBCC's liability, if any.

Staying these proceedings pending the resolution of *Duguid*  "will allow this Court to adjudicate the issues before it with far greater certainty.  To do otherwise would be a waste of judicial resources and a waste of the parties' time and energy.

**12**

**JOINT STATUS REPORT CONCERNING** *BARR*

For this reason, a stay awaiting clarity on the validity of the TCPA in general, and the definition of an ATDS more specifically, would allow for a more orderly disposition of [these proceedings]."  Dkt. 20 at 6.  For these reasons, Defendant JBCC respectfully requests that the Court maintain the current stay pending the Supreme Court's resolution of the definition of an ATDS in *Duguid*.

Dated:  July 16, 2020                          STEPTOE & JOHNSON LLP
                                               By:  ___*/s/* **Anthony Anscombe**\*___
                                                    Anthony Anscombe
                                                    Attorney for Defendant
                                                    JELLY BELLY CANDY COMPANY

Dated:  July 16, 2020                          TYCKO & ZAVAREEI LLP
                                               By:  ___*/s/* Annick M. Persinger___
                                                    Annick M. Persinger
                                                    Attorney for Plaintiff
                                                    HOWARD HOFFMAN

Dated:  July 16, 2020                          EDELSBERG LAW, P.A.
                                               By:  ___/s/ Scott Edelsberg___
                                                    Scott Edelsberg

## **ATTESTATION**

     \*Pursuant to Local Rule 131(e), I attest that that Plaintiff's counsel concurs in this filing's content and has authorized the filing.

**13**

**JOINT STATUS REPORT CONCERNING** *BARR*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 16, 2020, I electronically served the foregoing document on all counsels of record:

**STEPTOE & JOHNSON LLP**

/s/     Anthony J. Anscombe
ANTHONY J. ANSCOMBE

**14**

**JOINT STATUS REPORT CONCERNING** *BARR*